Commonwealth *v.* Lenart (et al., Appellant).

Argued April 19, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harris J. Sklar*, with him *Gross & Sklar*, for appellant.

*Alan J. Davis*, Assistant District Attorney, with him *Michael J. Rotko*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 21, 1968:

On January 15, 1965, Irvin J. Cassel gave a notarized statement to detective Bundy, of the Pennsylvania State Police, in which he said that in 1963 he had paid $60 to Gene P. Lenart, who was to use his influence with Magistrate Margaret Ruth Marmon in having a charge of illegal lottery against Cassel dismissed. The charge was dismissed.

Gene P. Lenart was later indicted on twelve bills of indictment based on four separate incidents. Of the twelve indictments three were founded on Cassel's statement, and they charged Lenart with blackmailing and extorting from Cassel money by creating the impression of influence with Magistrate Marmon on September 22, 1963. At the trial of Lenart, Cassel refused to testify in accordance with the statement he had given to detective Bundy, pleading his privilege against self-incrimination under both the Federal and State Constitutions.

Article I, §9, of the Pennsylvania Constitution declares that an accused "cannot be compelled to give evidence against himself." The District Attorney, however, invoked §32, Article III, of the Pennsylvania Constitution, which reads: "Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony, and any person convicted of either of the offenses aforesaid shall, as part of the punishment therefor, be disqualified from holding any office or position of honor, trust or profit in this Commonwealth."

In addition to this averred constitutional immunity from criminal prosecution, Cassel was assured by the district attorney that he would not be prosecuted because of the testimony he might present at the Lenart trial. The court also stated to Cassel that the statute of limitations had run against any criminal charges potentially pending against him. Cassel still refused to testify, and the judge held him in contempt of court, imposing a fine of $50 and a sentence of sixty days' imprisonment. Cassel appealed.

The sentence of the court must be reversed. The invoked §32 of the Constitution had no application to the crimes on which Cassel was asked to testify. Section 32 speaks of bribery, corrupt solicitation and practices of solicitation. Lenart was on trial for blackmail, extortion, and common law extortion. The Commonwealth contends that the term "practices of solicitation" should be broadly construed so as to include the

offenses named in the Lenart indictment. The Commonwealth would thus stretch the meaning of the words definitively spelled out in §32 of the Constitution.

This cannot be done. Where the Constitution limits the enjoyment of a man's liberties and inherent prerogatives, those words of limitation are not set in rubber type but are etched in steel, and admit of no elasticity whatsoever.

Thus, the phrases "practices of solicitation" cannot be placed on the Procrustean bed of interpretation and elongated to cover blackmail and extortion. There is more than a language differential between §32 of the Constitution and the crimes set out in Lenart's indictment. The difference is one of basic governmental evaluation of offenses. Bribery and corrupt solicitation are crimes assaulting the regularity of impartial enforcement of the law and the proper discharge of duties devolving on a public official. They have a direct effect on the weal of the Commonwealth. Blackmail and extortion, on the other hand, are based not so much on the public wrong which is done, but on the wrong committed against the individual who has been blackmailed or from whom money has been extorted.

In addition, there is a serious question as to whether the immunity granted by §32, namely, that "such testimony shall not afterwards be used against him in any judicial proceeding," is co-extensive with the Federal Constitutional privilege against self-incrimination. The Commonwealth admits that to be constitutionally effective the immunity must extend not only to the testimony given at the trial but to any other evidence that might be uncovered as a result of that testimony (*Counselman v. Hitchcock*, 142 U.S. 547).

It then goes on to say that ever since *Counselman v. Hitchcock*, every constitutional exclusionary rule has

been interpreted to encompass not only the tainted evidence but all of the "fruit of the poisonous tree." This is a nice phrase but the Constitution of Pennsylvania is not a miraculous orchard which can turn one apple into a bushel of apples. Section 32 specifically protects a witness from prosecution which could arise from testimony he gives in a case involving bribery and corrupt solicitation. It says nothing about evidence which could sneak into the orchard because of a chance word on another subject uttered by the witness. Section 32, in expressing the immunity to be assured the witness because of certain testimony, says that "such testimony shall not afterwards be used against him in any judicial proceeding." It does not say "such testimony or the fruits thereof shall not afterwards be used against him in any judicial proceeding."

It must also be stated here that §32 is no longer the law of the land. It was amended out of the Constitution on May 16, 1967, two weeks after the Lenart trial. While, of course, we are bound to interpret the law or the Constitution as it reads at the time any of its provisions are applied to a given set of facts, yet we cannot, in constitutional conscience, ignore that the people, the sovereign power of the Commonwealth, have repudiated §32. It would be an anomaly, if not a stultification of the fundamental principles of justice if a person were compelled to languish behind prison bars which the Constitution declares do not exist for the action which threw him into dungeon vile.

In pursuing its contention that Cassel should have been compelled to testify because no harm could befall him as the result of his testimony, the Commonwealth argues that the prosecution for Cassel's offenses, if any, were barred by the statute of limitations. This reasoning conflicts with what was said in *McFadden v. Reynolds*, 20 W.N.C. 312, namely, that the statute of limita-

tions is not per se a bar to prosecution; it is an affirmative defense which must be pleaded. Thus, if not pleaded, the prosecution machinery will grind. The privilege against self-incrimination is not limited to those cases where the witness can be *convicted* on the basis of his testimony. The privilege protects him regardless as to whether or not the trial would result in a conviction.

The Commonwealth says this rule should be overruled. It offers no reasoning for this desired repudiation except to say that the doctrine is "old." The doctrine was expressed in *McFadden v. Reynolds,* which was decided in 1887. Although no one knows today what tomorrow will bring we cannot say that 1887 goes into such antiquity as to make what was then pronounced useless today on the ground of longevity alone. The rule of presumption of innocence goes back centuries, but it certainly cannot be discarded because of age.

Then the Commonwealth tells us that the "overwhelmingly favored" rule of today is the one expressed in 58 Am. Jur., Witnesses, §74, p. 72, namely: "Accordingly, if the evidence sought to be elicited can in no event tend to a conviction of the witness of an offense against the laws of the state, his privilege to remain silent does not attach, even though the effect of his testimony will be to establish a breach of the law. This is the case if . . . the acts are no longer punishable, by reason of . . . the barrier to punishment raised by lapse of time."

We do not know that this rule is "overwhelmingly favored," but even if it does revel in that kind of popularity, we still do not see wherein it is a just rule. How could anyone say with certainty whether evidence will or will not lead to conviction? Who can foresee the results of a jury trial when one cannot predict what

150

will be presented during the trial in the way of cross-examination and surprise witnesses? The rule lauded by the Commonwealth, carried to its ultimate extent, could wipe out entirely the privilege against self-incrimination.

It is possible, in questioning a witness, in the absence of the privilege against self-incrimination, that criminal acts could appear which were not barred by the statute of limitations. This Court considered that very proposition in the recent case of *Commonwealth v. Carrera*, 424 Pa. 551: "And, under the more recent and now controlling federal decisions, it is not necessary that a real danger of prosecution exist to justify the exercise of the privilege against self-incrimination. It is sufficient if the person questioned has reasonable cause to apprehend such danger. See, Hoffman v. United States, 341 U.S. 479 (1951). Moreover, the privilege extends not only to the disclosure of facts which would in themselves establish guilt, but also to any fact which might constitute an essential link in a chain of evidence by which guilt can be established. . .

". . . for the court to properly overrule the claim of privilege, it must be *perfectly clear* (emphasis that of the court) from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency: Hoffman v. United States, supra.

"Under the circumstances the instant case presents, it is not 'perfectly clear' that the answers demanded of the appellant before the grand jury could not possibly have a tendency to incriminate her. On the contrary, it is clear that reasonable cause for such apprehension existed, and the privilege claimed should have been sustained."

In the case at bar there could be a reasonable apprehension on the part of the besieged witness that forced questioning might forge a link in a chain of evidence which could drag him into the prisoner's dock in a trial where his defense could be hampered because of lack of witnesses or other exculpatory evidence which had in the meantime disappeared.

Although it could happen in situations of this kind that a guilty person might escape penalty for his crime, it is also clear that a person could be impaled by his own words spoken in an environment, at a time, and under circumstances which intended a meaning quite different from the one forced into those words when he might have to stand trial himself. The risk of imperiling the innocent is too great to permit modification of the protection inherent in the constitutional guarantee against self-incrimination.

Threatening a person with imprisonment if he does not speak is only another form of the iniquitous "third degree," now relegated to the museum of horrors, together with historical accounts of the inhumanities and brutalities inflicted under the common law of England to compel untrue confessions. No one can turn the pages of the past relating stories of the rack, the piling of iron on helpless bodies, the whippings and other tortures in order to force self-accusatory statements, without concluding that the constitutional prohibitions in America against such fundamental encroachments on the rights of free men should never be relaxed an inch or modified by a single word through "judicial interpretation."

The Commonwealth finally informs us that Cassel's fears against further prosecution could only be illusionary because the district attorney himself offered immunity to the defendant. This offer cannot be accepted as legal tender in the bank of constitutional

guarantees. What was said in *Commonwealth v. Carrera* applies here: "It is our conclusion, in the absence of statutory authority providing district attorneys in the Commonwealth of Pennsylvania with the right to grant immunity to witnesses in criminal prosecutions, that a promise, as now suggested, would not be legally effective or binding."

The judgment is reversed, and Irvin J. Cassel is discharged from custody and bail.

Mr. Justice JONES, Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

---

CONCURRING OPINION BY MR. JUSTICE O'BRIEN:

I concur in the result reached by the majority. I do so for the reason that Cassel had reasonable cause to apprehend danger of prosecution from his testimony. I would not at this time reaffirm the holding of *McFadden v. Reynolds*, 20 W.N.C. 312 (1887), a case that has not withstood the test of time. As stated in 98 C.J.S., Witnesses, §438, p. 259: "As a general rule, a witness may be compelled to testify with respect to a crime the prosecution of which is barred by the statute of limitations." If the witness cannot be convicted of the crime, the fact that he can be prosecuted for it is of only academic interest. What is of general interest is that the witness' testimony can be vital to obtaining convictions, particularly in these days when the use of confessions has been so curtailed.

However, it is not altogether clear, or at least it was not altogether clear to the witness, that conviction for any crimes revealed by his testimony would be barred by the statute of limitations. The statute of limitations may have been tolled, e.g., by the witness' nonresidency. The record does not reveal the witness' residency during the entire period. Courts have split on the question of whether, upon a claim of privilege,

the witness has the burden of showing that the statute of limitations was tolled because he was out of the state, or whether the opponent of the privilege must show that the witness was continually a resident in' order to compel him to testify.[1]  Certainly, appellant could reasonably have believed that the statute had been tolled, and that it was the burden of the Commonwealth to prove otherwise.  It was thus proper for him to exercise his privilege against self-incrimination.

Mr. Justice ROBERTS joins in this concurring opinion.

---

[1] Compare *In re Pillo*, 11 N.J. 8, 93 A. 2d 176 (1952), with *People v. Rockola*, 339 Ill. 474, 171 N.E. 559 (1930).