379 A.2d 323

**In re GRAND JURY, APRIL TERM, 1977, WAYNE COUNTY.**

**Appeal of Charles MESITI.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1977.

Decided Oct. 27, 1977.

46

---

Charles J. Bufalino, Jr., West Pittston, with him Malcolm Limongelli, West Pittston, for appellant.

David Richman, Assistant District Attorney, with him Thomas E. Butler, Jr., and Elliott D. Goldberg, Assistant District Attorneys, Honesdale, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

Appellant Charles Mesiti appeals from an Order of the Court of Common Pleas of Wayne County citing him for civil contempt and ordering him imprisoned for the lesser of six (6) months, discharge of the Special Investigating Grand Jury of Wayne County, or appellant's purging himself of the contempt. Appellant alleges on this appeal that the lower court erred in finding him in contempt, in not specifying the information to be supplied by appellant in purging himself of contempt, and in setting conditions for purging the contempt which appellant cannot meet. We disagree with appellant's contentions and affirm the findings of the lower court.

On May 18, 1977, Appellant Mesiti was sworn as a witness to testify before a Special Grand Jury in Wayne County which was investigating certain conditions at Farview State Hospital, an institution for the criminally insane. Appellant, a charge guard on the medical-surgical ward of the hospital, was fully advised of his constitutional rights, including his privilege against self-incrimination. In his appearances before the Grand Jury on May 20 and 31, 1977, appellant invoked his privilege against self-incrimination and refused to answer any substantive questions about the conditions under investigation.

On June 1, in an *in camera* proceeding before TAKIFF, J., appellant again refused to answer these same substantive questions. During this proceeding, appellant told the court that but for his fear of self-incrimination, he would have substantive answers to the questions asked, although he was unsure of the accuracy and extent of his memory. Judge TAKIFF affirmed appellant's right to invoke the privilege against self-incrimination.

On June 23, 1977, the Commonwealth petitioned the Court of Common Pleas of Wayne County to grant appellant

immunity from prosecution pursuant to the Act of Nov. 22, 1968, P.L. 1080, No. 333, § 1, *et seq.*, 19 P.S. 640.1 *et seq.* (Cum.Ann. Pocket Part, 1977–78), and to compel appellant to testify. Following a hearing on the matter, the court granted appellant immunity and ordered him to testify before the Grand Jury. On June 29, appellant was called before the Grand Jury. With few exceptions, in response to the same questions to which appellant had previously invoked his privilege against self-incrimination, he then responded that he could not recall any of the circumstances involved in the area of questioning, specifically the alleged beating deaths of two Farview patients.

Later that day, the Special Prosecutor filed a petition asking the court to cite appellant for civil contempt. Following an answer by appellant and a hearing by the court, TAKIFF, J., did find appellant to be in civil contempt and ordered him committed to the Wayne County Prison for the time period noted, supra. Pending this appeal, a supersedeas was granted and appellant has been out of prison on bail. Appellant has been represented by counsel throughout these proceedings.

 " . . . '[T]he public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege . . ." (Citations omitted.) *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 644 (1972). Whether a person may invoke a privilege against testifying is a question within the discretion of the trial court. The privilege against self-incrimination

. . . extends to answers that would in themselves support a conviction under a . . . criminal statute [and] likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime. [Citations omitted.] But this protection must be confined to instances where the witness had reasonable cause to apprehend danger from a direct answer. [Citations omitted.] . . . It is for the court to say whether his silence is justified, [citations

omitted] and to require him to answer if "it clearly appears to the court that he is mistaken." [Citations omitted.] *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1950).

Following the lower court's determination that appellant legitimately invoked his privilege against self-incrimination, the court granted appellant immunity from prosecution, a decision the court explained at page 12 of its opinion citing appellant for contempt:

Based on the totality of the Court's observations of the witness, the substance of the various questions as to which he had invoked the constitutional privilege, the knowledge of the Court of the testimony of other witnesses who had appeared and testified before the Grand Jury and whose testimony disclosed that Mr. Mesiti was in a position to have knowledge of matters relevant and germane to the investigation, inter alia, the deaths of several patients at Farview which were under active investigation by the Grand Jury, the Court made the following conclusions:

a) The witness possessed relevant and material information responsive to the questions he had refused to answer;

b) The witness in good faith reasonably exercised his constitutional privilege against self-incrimination when he refused to answer the numerous questions;

c) The Grand Jury was in need of the testimony of the witness and if the witness when granted immunity would testify, the investigation would be advanced thereby.

The court, therefore, exercised its discretion in balancing appellant's privilege against self-incrimination against the Grand Jury's need for his testimony and ordered him to testify with immunity.

Appellant next appeared before the Grand Jury and refused to answer most of the questions propounded beyond a statement of "I don't recall." On petition by the Commonwealth, the court found appellant to be in contempt.

■■ To find a witness in contempt and to sentence that witness to prison for a definite period of time or until the witness purges himself of the contempt is " . . . within [the court's] inherent power to compel obedience to its order . . . ." *In re Martorano*, 464 Pa. 66, 81, 346 A.2d 22, 29 (1975). In considering an appeal such as this, " ' . . . great reliance must be placed upon the discretion of the trial judge.' [Citation omitted.]" *Bata v. Central Penn National Bank of Philadelphia*, 433 Pa. 284, 287–288, 249 A.2d 767, 768 (1969).

Upon a review of the record before us, we find some evidence that appellant misunderstood the concepts of self-incrimination and immunity. (*See, e. g.* N.T., June 29, 1977, at 45–47, 56–57, 59). We also find repeated statements by appellant that he never had any recollection of the events about which he was being questioned, even when he told the lower court he could remember. (*E. g.* N.T., June 29, 1977, at 22–23, 28–29.) And, we find evidence that appellant did not trust the Special Prosecutor questioning him before the Grand Jury (N.T., June 29, 1977, at 11, 19), and that he may have been misled by outside counsel as to the functioning and operation of the Grand Jury. (N.T., June 29, 1977, at 47–51.)

■ None of these findings, however, are of assistance to appellant, here. Even if appellant had not been fully and understandingly informed by his counsel on the subjects of self-incrimination and immunity (a conclusion opposite that of the lower court) or if he had been misled by outside counsel as to the Grand Jury's operations, such erroneous advice from counsel is no defense to a finding of contempt. *Farber v. Rizzo*, 363 F.Supp. 386, 395 (E.D.Pa., 1973). Neither is appellant's good faith belief that if his memory is not completely accurate he must refuse to testify, deny all recollection, or face perjury charges a defense to the contempt finding. In a case almost directly on point with this one, a witness before a Grand Jury in the Southern District of Florida refused to answer questions after being granted immunity because he had a poor memory and because "he

was afraid that truthful, but inconsistent, statements might be extracted from him, thus subjecting him to the likelihood of a perjury prosecution." *In re Grand Jury Proceedings*, 539 F.2d 382, 383 (5th Cir., 1976), *reh. denied*, 542 F.2d 575 (1976). In affirming the District Court's contempt citation, the Circuit Court said

> All that is required of a witness before a Grand Jury is that he testify truthfully. The Grand Jury members then weigh the credibility of a given witness and act accordingly.
>
> . . . What is required of appellant is no different from that required of all citizens. He must conduct himself within the law to the best of his ability. This includes the requirement that he testify truthfully before a Grand Jury. If criminal charges should emanate from these proceedings, there will be ample opportunity for the appellant to demonstrate any lack of mental capacity, failing memory, etc. *In re Grand Jury Proceedings*, supra at 383–384.

So, too, here, appellant is required to answer the questions propounded to the best of his ability. Even if he feels his memory is faulty, he must testify as truthfully as possible. If necessary, he later may use his faulty memory as a shield to perjury charges; he may not use it now as a sword to avoid the Special Prosecutor's questions.

█ In short, we refuse to find that the court abused its discretion in the conclusions it drew. The lower court found, *inter alia*, that appellant was an intelligent man who had been advised of his privilege against self-incrimination many times and who understandingly and in good faith invoked that privilege. The court also found that appellant, at the time he invoked the privilege and at the time he was held in contempt, possessed the power, knowledge, and information necessary to answer the questions propounded by the Special Prosecutor. His assertion of lack of memory, in the court's view, was " . . . saying nothing more than I refuse to answer. . . ." The refusal to answer was held to be arbitrary, capricious, and in a manner contumacious to the

court order. (Order of the Lower Court, July 5, 1977.) We agree.

Upon our affirmation of the lower court's finding of contempt, we must now address the issue of whether the court erred in setting conditions for purging the contempt which the witness is unable to meet. We conclude that the witness is able to meet the conditions and, therefore, no error occurred.

Appellant makes two arguments on this issue. The first, that appellant did not know specifically what information he was to provide, is patently without merit. The same questions had been asked of appellant on at least three different occasions, twice before the Grand Jury and once before the lower court *in camera*. These are the questions to which he twice invoked his privilege against self-incrimination and these are the questions to which he replied "I don't recall." The questions relating to appellant's knowledge of Farview State Hospital and the alleged beating deaths of two inmates there are the basis of this contempt appeal. The exact information appellant was to supply, i. e. the answers to the questions propounded, is well known to all the parties in this case. It is not necessary that the Court in its contempt order, recite every question that appellant failed to answer, but now must answer, in order to purge his contempt.

Secondly, appellant argues that he cannot purge the contempt because he has no recollection of the instances about which he was questioned. Our Supreme Court recently stated that to impose conditions a contemnor cannot perform, thereby depriving him of the ability to purge his contempt, transforms a method of enforcing compliance with a court order into a punishment. *Barrett v. Barrett,* 470 Pa. 253, 262, 368 A.2d 616, 620 (1977).

It is plain, therefore, that in determining whether [appellant] was properly imprisoned for civil contempt, the crucial question is not whether he willfully and contemptuously violated the original orders, but whether he had the present ability to comply with the conditions set by

the court for purging himself of his contempt. *Barrett* supra at 470 Pa. 262, 368 A.2d 620.

■ The general rule regarding civil contempt cases is that the complaining party, here the Commonwealth, has the burden of proving noncompliance with the court order by a preponderance of the evidence, and that present inability to comply is an affirmative defense to be proved by the contemnor. The *Barrett* Court held, however, that when a contemnor presents evidence of present inability to comply, the court " . . . should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced *beyond a reasonable doubt*, from the totality of the evidence before it, the contemnor has the present ability to comply." *Barrett* supra at 470 Pa. 264, 368 A.2d 621.

Based upon the totality of the evidence, including two specific admissions by appellant that but for his fear of incriminating himself, he would have substantive answers to the specific questions propounded (N.T. June 1, 1977, at 5–6, 9), the lower court found that appellant did have the present ability to comply with the order. The court, in its contempt order, stated "You led the Court to believe and the Court still believes that you do possess the power to answer these questions, and that you do possess the knowledge and the information necessary to answer these questions . . . ." (Order of the lower court, July 5, 1977.)

■ Upon a review of the record, we find sufficient evidence to support the lower court's belief, beyond a reasonable doubt, that appellant has the present ability to purge his contempt. Many of the questions were directed to appellant's own actions on occasions so dramatic that no intelligent person could have forgotten them. The court has not abused its discretion in setting these conditions.

Accordingly, we affirm the lower court's finding that appellant was in contempt and the conditions established by the court which appellant must meet to purge the contempt.

CERCONE, J., concurs in the result.

WATKINS, President Judge, dissents.