## Valley Bank and Trust Co. v. Roberts

*Jan G. Sulcove*, for plaintiff.
*David C. Cleaver*, for defendant.

KELLER, *J.*, February 16, 1979—This action in assumpsit was commenced by the filing of a complaint on August 22, 1978, and service of a true copy of the same upon defendant by Deputy Sheriff Peiffer on the same date. On praecipe of plaintiff the prothonotary entered a default judgment against defendant in the amount of $3,926.17 on September 12, 1978. On October 5, 1978, an interrogatory addressed to Barrett Silver in aid of execution and pursuant to Pa.R.C.P. 3117 was filed requesting the name and address of the person or persons possessing a 1976 Fiat automobile, vehicle identification No. 131A30142673 titled to above defendant. No response was filed by Mr. Silver. On November 14, 1978, at approximately 10:00 a.m. the deposition of Barrett L. Silver was taken. Mr. Silver testified that he was the manager of Sports Car Corral. In response to inquiries whether in the course of his business the witness acquired the said 1976 Fiat automobile, whether he had it in his possession, and the name and address of the persons possessing the vehicle, he refused to answer on the grounds that it might incriminate him. The transcript of the deposition was filed on November 30, 1978.

On December 4, 1978, plaintiff presented its motion for an order under Pa.R.C.P. 4019(b) granting a rule upon Barrett L. Silver to show cause why he should not answer certain specified questions. An order was entered on the same date granting a rule, and setting December 21, 1978, at 10:30 a.m. as the date and time for Mr. Silver to show cause why he should not answer the questions propounded or be held in contempt for failure to do so. The rule, together with a true copy of the petition and order of court, was served upon Barrett Silver on December 4, 1978, at 6:55 p.m. Hearing was held pursuant to the rule. At the conclusion of the hearing counsel for plaintiff and Mr. Silver requested leave to submit memoranda of law on the legal issues on or before January 15, 1979. The transcript of the hearing has been certified and memoranda of law received from counsel, and the matter is ripe for disposition.

### FINDINGS OF FACT

1. Barrett L. Silver was called as on cross-examination by counsel for the plaintiff, and identified himself as the manager and an officer of Sports Car Corral, a corporation.

2. In response to the hereinafter set forth questions posed by plaintiff's counsel, the witness refused to answer on the advice of counsel and on the ground that it might incriminate him:

"Q Now, during the course of your business as manager and officer of the Sports Car Corral, did the Sports Car Corral Inc., acquire a 1976 Fiat automobile, Identification No. 131A30142673, titled to the name of Gregory K. Roberts from William Mouse Auto Sales?

"A Under the advice of counsel, I refuse to answer on the ground that it may incriminate me.

"Q During the course of your business, did you individually acquire a 1976 Fiat automobile, Identification No. 131A30142673, titled to the name of Gregory K. Roberts from William Mouse Auto Sales?

"A On the advice of counsel I refuse to answer on the ground that it may incriminate me.

"Q Is the 1976 Fiat automobile which I just referred to presently in the possession of the Sports Car Corral Inc.?

"A On the advice of counsel, I refuse to answer on the ground that it may incriminate me.

"Q Is the 1976 Fiat automobile which I just referred to personally in your possession?

"A On the advice of counsel I refuse to answer on the ground that it may incriminate me.

"Q Would you state the name and address of the person or persons possessing the vehicle I just referred to?

"A On the advice of counsel I refuse to answer on the ground that it may incriminate me.

"Q Would you please state the present whereabouts of the vehicle I just referred to?

"A On the advice of counsel I refuse to answer on the ground that."

3. Since August 1978 neither Mr. Silver nor Sports Car Corral Inc. have been prosecuted for any violation of law pertaining to the said 1976 Fiat.

4. The Commonwealth of Pennsylvania, Department of Transportation Certificate of Title No. A29408777 for a 1976 Fiat with Vehicle Identification No. 131A30142673 was admitted into evidence. The certificate of title indicates that the said vehicle was titled on September 8, 1977 to Gregory K. Roberts, 361 East Garfield Street, Chambersburg, Pa. The certificate also discloses a first

lien in the amount of $5,332.32 in favor of Valley Bank & Trust Company, P.O. Box 459, Chambersburg, Pa.

5. The certificate of title to the said motor vehicle has at all times herein relevant been in the possession of plaintiff, and plaintiff has at no time here relevant released its lien.

6. As hereinbefore noted a default judgment was entered in favor of plaintiff lien holder and against defendant title owner of the said vehicle on September 12, 1978.

7. Plaintiff desires to execute upon its judgment, but the defendant has no property other than the said 1976 Fiat automobile, which no longer is in Mr. Roberts' possession.

8. In January 1978, Mr. Mouse of Bill Mouse Auto Sales discussed with Charles Nelson, assistant loan officer for plaintiff, the possibility of defendant trading the 1976 Fiat for a 1973 Grand Prix. The inquiry posed by Mr. Mouse was whether plaintiff would release the title and its lien on the 1976 Fiat in exchange for the titles to the 1973 Grand Prix and a 1974 Volkswagon. Mr. Nelson indicated to Mr. Mouse that plaintiff would consider the proposal, but that defendant, Mr. Roberts, had not yet made up his mind about the transaction and would be in contact with Mr. Mouse. Mr. Mouse was then to get in touch with Mr. Nelson.

9. Subsequent to the foregoing conversation, the defendant transferred possession of the 1976 Fiat, but not the title, to Bill Mouse Auto Sales.

10. Thereafter Bill Mouse Auto Sales transferred possession of the 1976 Fiat, without title, to Sports Car Corral Inc.

11. Barrett Silver orally advised Mr. Nelson that possession of the said 1976 Fiat had been transferred to a third party.

12. Trooper Wiegand is a member of the Pennsylvania State Police assigned to the Chambersburg Barracks. He is in charge of vehicle titles and inspecting automobile dealers.

13. At the request of Mr. Mouse, trooper Wiegand sat in on a conference attended by Mr. Nelson on behalf of plaintiff, Mr. Mouse, and Mr. Silver about October 18, 1978. Mr. Nelson was under the impression that the trooper was present as a favor to Mr. Mouse looking into the situation.

14. Some time prior to the meeting above referred to trooper Wiegand had a conference with Mr. Silver concerning the 1976 Fiat and advised him that there was a potential violation of the Vehicle Code for sale of an automobile without a title, and "a possibility of fraud."

15. No prosecution has been instituted against Mr. Silver, Sports Car Corral Inc., Bill Mouse Auto Sales, or any other person as a result of any transactions involving the said 1976 Fiat.

## DISCUSSION

Mr. Silver's right to invoke his Fifth Amendment privilege against self-incrimination is promulgated in our Judicial Code of July 9, 1976, P.L. 586, as amended, 42 Pa.C.S.A. §5941: "(a) General Rule.—Except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him . . ."

The privilege against self-incrimination, as stated in the Judicial Code, is not confined to criminal cases alone: Schwinger Appeal, 181 Pa.

Superior Ct. 532, 124 A. 2d 133 (1956); and applies to witnesses as well as parties: Com. v. Tracey, 137 Pa. Superior Ct. 221, 8 A. 2d 622 (1939).

Whether the witness' answer would tend to incriminate him is to be determined by the trial judge. In Com. v. Carrera, 424 Pa. 551, 227 A. 2d 627 (1967), the Supreme Court of Pennsylvania discussed the issue of refusal to testify.

"When an individual, such as the instant appellant, is called to testify before a grand jury or in a judicial proceeding, he or she is not exonerated from answering questions merely upon the declaration that in so doing it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected. However, for the court to properly overrule the claim of privilege, it must be perfectly clear from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded cannot possibly have such tendency." supra 553.

As to what justifies a reasonable belief that an answer would incriminate the witness, the court in Carrera held:

". . . [I]t is not necessary that a real danger of prosecution exist to justify the privilege against self-incrimination. It is sufficient that the person questioned has reasonable cause to apprehend such damages. See, Hoffman v. United States, 341 U.S. 479 (1951). Moreover, the privilege extends not only to the disclosure of facts which would in themselves establish guilt, but also to any fact which might constitute an essential link in a chain of evidence by which guilt can be established [citations omitted]." supra 553.

In the case at bar, this court does not find that Mr. Silver has reasonable cause to believe that his answers would be incriminating and that he would face criminal liability as a result of his answers. Trooper Wiegand told Mr. Silver that there was a potential violation of the Vehicle Code because of the sale of the automobile without the title. The "potential" violations mentioned by Trooper Wiegand apparently come under section 1111(a) of the Vehicle Code of June 17, 1974, P.L. 162, 75 Pa.C.S.A. §1111, or section 1113, 75 Pa.C.S.A. §1113. Though officer Wiegand has been aware of the situation since July 1978, no prosecution has been instituted against Mr. Silver or Sports Car Corral Inc. Nor does it appear to the court that there is likely to be any prosecution.

These violations are both summary offenses with the fine for section 1111 being $100 for the first offense, and $50 for each offense under section 1113. The statute of limitations for summary offenses under the Vehicle Code is 30 days after commission or discovery of commission of the crime: Judicial Code of July 9, 1976, P.L. 586, as amended, 42 Pa.C.S.A. §5553. The statute of limitation has long since run. We do note that the courts have long held that one can claim privilege against self-incrimination even though the statute of limitations has run: Com. v. Lenart, 430 Pa. 144, 242 A. 2d 259 (1968), citing McFadden v. Reynolds, 20 W.N.C. 312 (1887); Rosenbaum Co. v. Tomlinson, 7 D. & C. 2d 500 (1956). However, the minor nature of the criminal act coupled with the running of the statute of limitation leads this court to conclude that the possibility of prosecution is, at best, extremely remote.

The witness also claims that there is the possibil-

ity of a prosecution for fraud. Nothing in the record leads us to believe that there is any reasonable danger of Mr. Silver being prosecuted for fraud under any of the sections of the Crimes Code quoted in Mr. Silver's brief. Mr. Silver testified that he could not even remember if trooper Wiegand used the word "fraud" when they spoke.

In reading Carrera, supra, it is clear that a witness claiming the privilege against self-incrimination need not show that a real danger of prosecution exists. However, there must be a reasonable apprehension of such damages. When the possibility of criminal prosecution is so remote, as in the case at bar, we do not feel there is reasonable cause to fear incrimination.

Parenthetically, we note that the Carrera case has been followed by the Supreme Court in Com. v. Rodgers, 472 Pa. 435, 372 A. 2d 771 (1977), and Com. v. Lenart, supra.

One further point to be mentioned is that certain questions propounded to Mr. Silver were intended as questions to him as an officer of Sports Car Corral Inc. and not to him as an individual. Mr. Silver refused to answer these questions on the grounds of self-incrimination. "It is settled that a corporation is not protected by the constitutional privilege against self-incrimination." Bearings, Inc. v. Bethayres Concrete Products Co., 79 Montg. 48, 50 (1961). Nor can an individual, when acting in his official capacity as a representative of a corporation, have a personal privilege against self-incrimination: Curcio v. U.S., 354 U.S. 118, 77 S.Ct. 1145, 1 L. Ed. 2d 1225 (1957); U.S. v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L. Ed. 1542 (1944); Kaeppler v. Jas. H. Matthews & Co., 200 F. Supp. 229 (E.D. Pa. 1961); Wild v. Brewer, 329 F. 2d 924

(9th Cir. 1964); Com. v. Evans, 190 Pa. Superior Ct. 179, 154 A. 2d 57 (1959); Com. ex rel. Camelot Detective Agency v. Specter, 451 Pa. 370, 303 A. 2d 203 (1973); Com. v. L. E. Wilson Co., 458 Pa. 470, 328 A. 2d 502 (1974).

## ORDER

Now, February 16, 1979, Barrett L. Silver is directed to appear before this court at 3:00 p.m. on Tuesday, February 27, 1979, to answer under oath the questions propounded to him by counsel for Valley Bank and Trust Company, plaintiff, on December 21, 1978.