469 A.2d 252

**COMMONWEALTH of Pennsylvania**

**v.**

**Ociele HAWKINS.**

**Appeal of Kim NELSON.**

Superior Court of Pennsylvania.

Submitted Sept. 9, 1983.

Filed Dec. 16, 1983.

Barry H. Oxenburg, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and CAVANAUGH and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant challenges the lower court's contempt order, arguing that he was justified in refusing to testify after being granted immunity because the Assistant District Attorney had threatened to prosecute him for perjury if his

testimony failed to conform to his prior statement to the police. We disagree and, accordingly, affirm the contempt order and judgment of sentence.

Appellant was called as a witness for the prosecution in the Commonwealth's case against Ociele Hawkins, who was charged with the December 18, 1978 murder of James Hughes. On January 8, 1979, appellant gave a statement to the police concerning the incident. Prior to Hawkins' trial, after being advised that appellant would invoke the privilege against self-incrimination if questioned under oath, the Commonwealth petitioned for and was granted an immunity order pursuant to 42 Pa.C.S.A. § 5947.[1] On January 22, 1982, appellant was called to testify but refused to answer questions put to him by the prosecutor even though he had been advised of the grant of immunity and directed to answer by the court. Consequently, the trial judge found appellant in contempt and sentenced him to five months and twenty-nine days imprisonment, to run consecutively to the sentence appellant was then serving. This appeal followed.

Appellant contends that he refused to testify because the Assistant District Attorney threatened to prosecute him for perjury if his testimony failed to conform to his prior statement. We find appellant's contention meritless.[2] Ap-

---

**1.** The Pennsylvania immunity statute, 42 Pa.C.S.A. § 5947(b), provides in part that "The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney: (1) the testimony or other information from a witness may be necessary to the public interest; and (2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

**2.** Appellant contends that he refused to testify because of the prosecutor's threat despite indications in the record that his refusal may have been based upon fear for his family's safety. In response to the court's questioning in chambers, defense counsel stated the following:

He [appellant] is afraid, Judge.

.        .        .        .        .

He communicated to me that he is afraid not so much for his own safety—although he is—but for the safety of his wife and children who are still—

.        .        .        .        .

pellant's account of his conversation with the Assistant District Attorney on January 20, as reported by appellant's counsel, is as follows:

> [M]y client [appellant] advised me that he had a conversation with the Assistant District Attorney in this case, and while I was not party to that conversation, it is my understanding that Mr. Long [the Assistant District Attorney] indicated to my client that he wants him to tell the truth on one hand. On the other hand, he told him that if he in any way deviates on the witness stand his testimony from that which he told the police in his statement which was taken on January the 8th of 1979, that the District Attorney's office would prosecute him for perjury and recommend that if he were convicted, he would receive the maximum sentence of three and a half to seven years.

(N.T. January 22, 1982 at 4–5).

▇▇▇▇ Our Supreme Court has stated the following:

> In general, immunity statutes protect persons who are compelled to give testimony, from the use of the compelled testimony and evidence derived therefrom in subsequent criminal prosecutions.... Neither immunity statutes nor the Fifth Amendment, however, "endow the person who testifies with a license to commit perjury."
> ... Accordingly, the United States Supreme Court has upheld convictions for perjury committed during the giving of a compelled statement where the respondent's immunized statement was used at a subsequent prosecution for making false statements....

*Commonwealth v. Sklar*, 497 Pa. 404, 413, 441 A.2d 1201,

That he doesn't want the defendant to know that why he is not testifying is because he is afraid that that will just do indirectly what he was afraid they would do directly.
(N.T. January 22, 1982 at 16–17).
The Assistant District Attorney refused to admit or deny for the record whether the conversation between himself and appellant occurred as appellant alleged. (N.T. January 22, 1982 at 8).

1206 (1982) (citations omitted).[3]  The promise of immunity is premised on the assumption that the information will be truthful and if the information turns out to be false, there can be no immunity because of the basis for the grant of immunity would have been frustrated.  *Id.*, 497 Pa. at 414, 441 A.2d at 1206.  Therefore, appellant could have been prosecuted for perjury if he had testified falsely, regardless of whether his testimony differed from or conformed exactly to his prior police statement.[4]

Appellant's refusal to testify can be justified only if such testimony would put him in jeopardy.  It is clear that such is not the case.  Under the Pennsylvania immunity statute, immunized testimony or information derived from such testimony cannot be used against the witness in any criminal case; the only exceptions are for prosecutions for perjury or false swearing.  42 Pa.C.S.A. § 5947(d)(1).  Here, if appellant testified truthfully on the stand and his testimony differed markedly from his prior statement to the police, then he could not even be prosecuted for making false statements to authorities.  *See* 18 Pa.C.S.A. § 4904(a)(1) (Unsworn Falsification to Authorities).[5]

3.  The United States Supreme Court has held that, under the federal immunity statute, 18 U.S.C. § 6002, such immunity is coextensive with the scope of the fifth amendment privilege against compulsory self-incrimination, *see Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), *reh. denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972), but that neither § 6002 nor the fifth amendment precludes the use of defendant's immunized testimony at a subsequent prosecution for perjury or making false statements, *see United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).

4.  The Pennsylvania perjury statute, 18 Pa.C.S.A. § 4902(a), provides in part that "A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true."

5.  18 Pa.C.S.A. § 4904(a) provides in part that "A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true[.]"

In *United States v. Frumento,* 552 F.2d 534 (3d Cir.1977), the defendant contended that the federal immunity statute, 18 U.S.C. § 6002, and the fifth amendment privilege presented him with the following dilemma: if the testimony was untruthful (*i.e.,* exculpatory as to him) he would be subject to a perjury prosecution; but if the testimony was truthful (*i.e.,* inculpatory) then it could be used against him to impeach his testimony at any subsequent prosecution. Such reasoning was rejected by the third circuit court, which stated that "for his 'dilemma' to move this Court to rule that § 6002 immunity does not provide the full measure of Fifth Amendment protection, he must demonstrate that his *truthful* immunized statements could be used against him. This he cannot do." *Id.* at 542 (emphasis in original). The court further stated that the defendant's dilemma was "illusory" because his testimony could only be used against him in the event of a perjury prosecution. *Id.* at 543–44. In the instant case, appellant alleges a similar dilemma, which is equally illusory because his testimony could only have been used against him if he committed perjury. In *In re Grand Jury, April Term, 1977, Wayne County,* 251 Pa.Superior Ct. 43, 379 A.2d 323 (1977), we held that it was no defense to a contempt finding that the witness believed in good faith that "if his memory is not completely accurate, he must refuse to testify, deny all recollection, or face perjury charges[.]" *Id.,* 251 Pa.Superior Ct. at 50, 379 A.2d at 326. The court reasoned that "If necessary, he later may use his faulty memory as a shield to perjury charges; he may not use it now as a sword to avoid the Special Prosecutor's questions." *Id.,* 251 Pa. Superior Ct. at 51, 379 A.2d at 326. Similarly, in the present case, appellant may later use the truth as a "shield" to perjury charges but he may not use it now as a "sword" to avoid testifying.[6]

6. In an analogous situation, the court in *Commonwealth v. Good,* 461 Pa. 546, 337 A.2d 288 (1975), held that failure to advise the defendants that they had a right to consult with an attorney before and after grand jury testimony did not preclude their convictions for perjury because the defendants could have refused, on grounds of self-incrimi-

Appellant is further protected from false prosecutions for perjury by the legal ethical standards applicable to prosecutors. While it is true that a prosecutor has broad discretion to decide whether and when to prosecute, *see Piscanio Appeal,* 235 Pa.Superior Ct. 490, 494, 344 A.2d 658, 660 (1975), *quoting Commonwealth v. DiPasquale,* 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968), and enjoys absolute immunity from liability for actions taken within the scope of his official duties, *see Ross v. Meagan,* 638 F.2d 646 (3d Cir.1981), it is nevertheless required that he or she "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause[.]" Rule 3.8 of the American Bar Association (ABA) Model Rules of Professional Conduct, 52 U.S.L.W. 1, 20 (August 16, 1983).[7]

nation, to answer the questions, and could likewise have defended against any subsequent contempt citation for such refusal to answer. The defendants had argued that they were presented with only three options: (1) refuse to testify and thereby be subject to contempt citations; (2) confess to substantive violations and thereby incriminate themselves; or (3) deny any wrongdoing and thus commit perjury. *Id.,* 461 Pa. at 551, 337 A.2d at 290. The court, in response, stated that this "trilemma" (contempt, harmful disclosure, or prejury) existed "for many witnesses every day" and that "[w]hen ... a witness chooses to resolve that conflict by lying under oath, the perjury cannot be permitted to go unpunished." *Id.,* 461 Pa. at 552, 337 A.2d at 291. In the instant case, appellant faced only· a *dil*emma because he was granted immunity from prosecution for any harmful disclosures on the stand; similarly, this dilemma did not excuse appellant from his duty to testify truthfully.

*Commonwealth v. Lenart,* 430 Pa. 144, 242 A.2d 259 (1968), cited by appellant (Brief for Appellant at 13), is distinguishable in that the witness, who refused to testify in accordance with a prior statement, was not granted immunity and therefore could exercise the privilege against self-incrimination. In determining when the claim of privilege should be denied, the court stated that "it must be *perfectly clear* ... from a careful consideration of all the circumstances, that the witness is mistaken in the apprehension of self-incrimination and the answers demanded *cannot possibly* have such tendency[.]" *Id.,* 430 Pa. at 150, 242 A.2d at 263 (emphasis in original).

7. Standard 3–3.9(a) of the 1979 ABA Standards Relating to the Administration of Criminal Justice provides that "It is unprofessional conduct for a prosecutor to institute, or cause to be instituted, or to permit the continued pendency of criminal charges when it is known that the charges are not supported by probable cause." *See also* Standard 3–1.1(c) ("The duty of the prosecutor is to seek justice, not

Appellant, having been granted immunity, should have testified truthfully, regardless of his fear of prosecution for perjury. As a witness, he ran the same risk as any other witness that what he said under oath would be scrutinized and, if false, penalized. In considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge. *In re Grand Jury, April Term, 1977, Wayne County, supra,* 251 Pa.Super. at 50, 379 A.2d at 326. Because we find no abuse of discretion, we must affirm the contempt order and judgment of sentence.

Affirmed.

merely to convict."); and Standard 3–3.1(b) ("It is unprofessional conduct for a prosecutor to use illegal means to obtain evidence[.]").