# In re Petition of Wilson, Elser, Moskowitz, Edleman & Dicker LLP, for an Order To Take the Deposition of Edward Grattan

C.P. of Allegheny County, no. GD99-12042.

*Patrick M. Livingston,* for Edward Grattan.
*Thomas Quinn* and *Dana M. McCarty,* for Joseph Rosa.

WETTICK, *J.,* April 23, 2001—The subject of this opinion and order of court is a petition by defendants in a New Jersey civil action to compel a non-party witness

residing in Pennsylvania to answer questions at a deposition for use in the New Jersey litigation. The issue that I address is whether the witness may invoke the privilege against self-incrimination where the statute of limitations has expired as to any crimes for which he could be prosecuted.[1]

## FACTUAL BACKGROUND

The New Jersey litigation for which the testimony is sought is a legal malpractice action in which plaintiffs seek compensatory damages in excess of $15 million that they allegedly sustained because of the entry of a guilty plea to criminal charges (theft by deception) in 1993.

In 1992-1993, the individual plaintiffs in the New Jersey malpractice action ("plaintiffs") were targets of a criminal investigation by the prosecutor of Union County, New Jersey. The company which they owned (AMS) had a franchise/fee agreement with a county authority to dispose of residual and patient care waste. Under this arrangement, AMS was reimbursed for actual costs incurred, including money paid to landfill operators. Plaintiffs had a contract with EMAC, a company operated by

---

1. Article 1, Section 9 of the Pennsylvania Constitution provides that a person "cannot be compelled to give evidence against himself." The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." Since 1964, the protections of the Fifth Amendment have governed state court proceedings. *Malloy v. Hogan,* 84 S.Ct. 1489 (1964). Consequently, the privilege against self-incrimination is governed by the United States Supreme Court case law construing the Fifth Amendment unless a witness claiming a privilege against self-incrimination can establish that Article 1, Section 9 of the Pennsylvania Constitution provides greater protection. See generally, *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957 (1995).

Edward Grattan and two other persons. Mr. Grattan's company transported the waste from a transfer station in New Jersey to a disposal site in Allegheny County.

Plaintiffs were accused of requiring EMAC to pay kickbacks in excess of $700,000 to keep the contract. These payments were accounted for on EMAC's financial records as rent and shuttle fees. Since the kickbacks were reported as payments for rent and shuttle fees, the county authority was overcharged.[2]

The defendants in the New Jersey malpractice action are lawyers and law firms who represented plaintiffs in their dealings with governmental bodies in connection with the waste collection business. Plaintiffs' expert in the New Jersey malpractice action will testify that the money which EMAC paid for rent and shuttle charges was for actual services it received; there was nothing illegal in the transaction. Consequently, these payments should have been reported to appropriate governmental bodies.

According to plaintiffs' expert, the payments were not reported because defendants incorrectly and improperly instructed plaintiffs not to report the payments. If plaintiffs had received proper legal advice, the payments would have been reported and there would not have been any criminal prosecution.

As part of its defense, defendants wish to establish that EMAC's payments were not for actual services. The

---

2. This description is based on the transcript of guilty plea in the Superior Court of New Jersey Law Division: Union County before Honorable Edward W. Beglin Jr. (Accusation no. 93-12-1433) (12/1/93) and on the transcript of proceedings, Union County Grand Jury, *State of New Jersey v. A.M.S.,* case no. 92-1369 (9/15/93).

theft by deception guilty plea was entered because EMAC was paying kickbacks to retain its contract.

As part of the 1992-1993 criminal investigation, Mr. Grattan, after receiving a grant of immunity, appeared before a Union County Grand Jury on September 15, 1993. Mr. Grattan testified that he made illegal payments to keep the contract (T. 108); it was necessary for him to pay money to the principals of AMS to keep the contract (T. 61); these payments were accounted for as rent and shuttle fees (T. 64); even though these were accounted for on the books in this fashion, these were not legitimate expenses—the payments were not for legitimate needs of the business (T. 65); this accounting method was devised so anyone looking at the books would not be able to tell they were kickbacks (T. 65-66); they were not legitimate fees. (T. 75-76, 78-79.)

On April 16, 1999, defendants obtained a court order from the New Jersey courts granting a commission to compel the deposition of Mr. Grattan. He was deposed in Allegheny County on October 21, 1999. At the deposition, he asserted his Fifth Amendment privilege. Thereafter, pursuant to a court order from the New Jersey courts, defendants obtained a transcript of Mr. Grattan's testimony before the grand jury. Shortly thereafter, plaintiffs, through a motion in limine, obtained a ruling from the New Jersey courts that the testimony was inadmissible at trial, because the plaintiffs were not afforded the opportunity to cross-examine Mr. Grattan when he testified before the grand jury.

Thereafter, on July 21, 2000, defendants obtained a court order from the New Jersey courts granting defendants leave to depose Mr. Grattan for a second time. The court order further provided for a special master to be

appointed at defendants' expense to rule on objections raised at the deposition.

At a second deposition held in Allegheny County on October 17, 2000, presided over by a special master, Mr. Grattan again asserted the Fifth Amendment privilege. The special master concluded that it would be a waste of everyone's time for him to rule on whether Mr. Grattan may invoke the Fifth Amendment privilege because the losing party would challenge his ruling in this court.

## DISCUSSION OF LAW

Since the Fifth Amendment privilege against self-incrimination applies to the states, I initially consider rulings of the United States Supreme Court construing the Fifth Amendment.

In this case, there is no possibility that Mr. Grattan can be successfully prosecuted for any conduct described in his grand jury testimony because any criminal activity that occurred prior to his testimony is barred by the statute of limitations. Under federal case law, a person may not assert the Fifth Amendment privilege where there is no possibility that truthful answers to any questions may be used in any way to convict the witness of a crime. A liberal reading of federal case law is set forth in a foot-note of the concurring opinion of Mr. Justice Marshall in *Pillsbury Co. v. Conboy,* 103 S.Ct. 608, 618 n.1 (1983):

"A witness is generally entitled to invoke the Fifth Amendment privilege against self-incrimination whenever there is a realistic possibility that his answer to a question can be used in any way to convict him of a crime. It need not be probable that a criminal prosecution will be brought or that the witness's answer will be intro-

duced in a later prosecution; the witness need only show a realistic possibility that his answer will be used against him. Moreover, the Fifth Amendment forbids not only the compulsion of testimony that would itself be admissible in a criminal prosecution, but also the compulsion of testimony, whether or not itself admissible, that may aid in the development of other incriminating evidence that can be used at trial. See *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

*"The privilege is inapplicable only 'if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness.' Brown v. Walker,* 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896). *It has long been recognized that the court may require a witness to give testimony, including testimony that admits to involvement in a criminal act, when there is no possibility of future criminal charges being brought against the witness. For example, a witness may be compelled to testify concerning his involvement in a crime when he is protected from later prosecution* by the Double Jeopardy Clause, *e.g., Reina v. United States,* 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960) (dictum) *by the applicable statute of limitations,* see *e.g., United States v. Goodman,* 289 F.2d 256, 259 (CA4 1961), or by a pardon, see *Brown v. Walker,* 161 U.S. 591, 599-600, 16 S.Ct. 644, 647-48, 40 L.Ed. 819 (1896)." (emphasis added)

Also see 3 Charles E. Torcia, *Wharton's Criminal Procedure* (13th ed. 1991) Section 352:

"A witness is not entitled to assert his privilege against self-incrimination in respect of a particular question un-

less he is liable to prosecution and punishment. A witness is not liable to prosecution and punishment if he has been pardoned, if he has been granted indemnity or special amnesty, or if the pertinent statute of limitations has expired, in which case he may be required to testify.

"A witness who refuses to answer on the ground of privilege must show that the danger of incrimination is real, or that he has reasonable cause to apprehend such danger. The privilege may not be asserted if there is no rational connection between the possible answers to the question and the prosecution for a crime, or if there is merely a remote possibility of such a prosecution." (footnotes omitted)

Mr. Grattan contends that the Fifth Amendment's protections are more restrictive than the protections afforded by Article 1, Section 9 of the Pennsylvania Constitution. Mr. Grattan relies on an 1887 opinion of the Supreme Court of Pennsylvania in *McFadden v. Reynolds,* 11 A. 638 (Pa. 1887).

This was an action for a breach of promise of marriage in which the jury rendered a verdict in the plaintiff's favor. It appears that under Pennsylvania law, any previous sexual activity of the plaintiff would have barred her right to recover, unless the promise of marriage was made with knowledge of this fact. The defendant called a witness to give testimony as to whether the witness had "carnal knowledge of plaintiff" on a certain date more than two years previous. The witness declined to answer on the ground that the answer might incriminate him. The trial court ruled that the witness need not answer. On appeal, the Pennsylvania Supreme Court upheld the ruling. The court stated:

"We are not prepared to hold that, where a witness is asked upon the stand to say whether he has committed a crime, he shall be compelled to do so simply because he may, if a prosecution for that crime is subsequently instituted against him, plead the statute of limitations in defense. It seems to us he is protected against criminating himself in such a manner as to subject himself even to a prosecution. Were he compelled to answer the question as a witness, his answer would be sufficient, when testified to by others who heard it, to lay before a magistrate, who could commit him to prison to answer the charge, in default of bail. It would be also sufficient to place before a grand jury, who could find an indictment against him upon mere proof of his extorted answer. He could thereupon be compelled to appear in a criminal court to answer the charge, and would be obliged to employ counsel to defend him. He would necessarily undergo all the expense and trouble, besides suffering the shame, perhaps the ignominy, of defending himself against a criminal accusation made by his own mouth and against himself, because he was coerced to do so by the peremptory order of a court clothed with power to commit him indefinitely to prison for contempt in case of disobedience. At least, he would be obliged to plead the statute of limitations, and, if the crime were infamous, an acquittal on such a plea would be scarcely better than a conviction. We have never held that a witness might be compelled to criminate himself in such circumstances, and with our present views we decline to hold so now. The first assignment of error is therefore dismissed." *Id.* at 641.

Mr. Grattan contends that I must follow *McFadden* because it has never been overruled. However, the Penn-

sylvania Supreme Court has cited *McFadden* on only one occasion (*Commonwealth v. Lenart,* 430 Pa. 144, 242 A.2d 259 (1968)) and on that occasion a majority of the court failed to endorse the reasoning set forth in *McFadden.* The issue in *Commonwealth v. Lenart* was whether a witness who refused to answer whether he had paid money to a person to influence a magistrate could invoke the privilege against self-incrimination under the federal and state constitutions. The trial court ordered the witness to testify; the court ruled that the witness could not invoke the privilege because he had been assured by the district attorney that he would not be prosecuted and because the statute of limitations had run against any criminal charges potentially pending against him. The witness refused to comply with the court order and the trial court held him in contempt of court, imposing a fine and a sentence of 60 days imprisonment. The witness appealed.

On appeal, Mr. Justice Musmanno, writing for a plurality of the court, stated that the holding in *McFadden* is still good law. In response to the Commonwealth's argument that the overwhelmingly favored rule of today is that the right to remain silent does not attach where the statute of limitations bars any criminal prosecution, he said:

"We do not know that this rule is 'overwhelmingly favored,' but even if it does revel in that kind of popularity, we still do not see wherein it is a just rule. How could anyone say with certainty whether evidence will or will not lead to conviction? Who can foresee the results of a jury trial when one cannot predict what will be presented during the trial in the way of cross-examination and surprise witnesses? The rule lauded by the Commonwealth,

carried to its ultimate extent, could wipe out entirely the privilege against self-incrimination." *Id.* at 149-50, 242 A.2d at 263.

One justice joined in this opinion. Three justices only concurred in the result. In a concurring opinion (in which one justice joined), Mr. Justice O'Brien stated that it was proper for the witness to exercise his privilege against self-incrimination because the statute of limitations may not have been tolled since the witness was out of the state. He wrote the concurring opinion because he did not believe that the court should follow *McFadden:* "I concur in the result reached by the majority. I do so for the reason that Cassel had reasonable cause to apprehend danger of prosecution from his testimony. I would not at this time reaffirm the holding of *McFadden v. Reynolds,* [11 A. 638,] 20 W.N.C. 312 (1887), a case that has not withstood the test of time. As stated in 98 C.J.S. Witnesses §438, p. 259: 'As a general rule, a witness may be compelled to testify with respect to a crime the prosecution of which is barred by the statute of limitations.' If the witness cannot be convicted of the crime, the fact that he can be prosecuted for it is of only academic interest. What is of general interest is that the witness' testimony can be vital to obtaining convictions, particularly in these days when the use of confessions has been so curtailed." *Id.* at 152, 242 A.2d at 264 (J. O'Brien concurring).

I am not following *McFadden v. Reynolds* because it is not consistent with rulings of the Pennsylvania appellate courts compelling witnesses who have received a grant of immunity to testify in open court regarding conduct that may be infamous. See *e.g., Commonwealth v. Swinehart, supra.* The witness with the grant of immu-

nity who is compelled to testify is in the same position as the witness protected by the statute of limitations who is compelled to testify. Consequently, if *McFadden* were the law of Pennsylvania, Pennsylvania courts would not compel the witness with the grant of immunity to testify because of the danger recognized in *McFadden* of a prosecution based on the witness's testimony to which there is a valid defense and the harm that would flow from such a prosecution.

I also decline to follow *McFadden* because I am not aware of any jurisdiction which extends its privilege against self-incrimination to situations in which all possible criminal prosecution is barred by the statute of limitations. Defendants' supplemental brief in support of motion to compel at 6 states that no court in the 20th century has adopted the *McFadden* view. It cites approximately a dozen cases in support of this statement. Mr. Grattan's counsel does not contest this statement or cite any cases which follow *McFadden*.

Mr. Grattan also raises the following argument: "I run the risk of being criminally prosecuted for any testimony that I give in 2001 regarding the contract with AMS because my 2001 testimony may differ from my 1993 testimony before the grand jury. Consequently, a prosecutor may use my testimony before the grand jury to convict me of perjury for my testimony in 2001 if my testimony in the 2001 litigation differs from my prior testimony."

Mr. Grattan cannot be convicted if the testimony that he gave in 1993 was false because the statute of limitations has run for perjury committed in 1993; but he can be convicted if testimony given in 2001 proceedings is false. However, Pennsylvania case law holds that the

privilege of self-incrimination does not protect a witness from criminal charges based on a fear of prosecution for perjury where the witness has testified truthfully.

In *Commonwealth v. Hawkins,* 322 Pa. Super. 199, 469 A.2d 252 (1983), a witness challenged the trial court's contempt order where he had refused to testify after being granted immunity, because the assistant district attorney had threatened to prosecute him for perjury if his testimony failed to conform to his prior statement to the police. The Superior Court affirmed the contempt order and judgment of sentence.

In that case, the witness had given a statement to the police concerning an incident that resulted in a criminal prosecution against another person. Prior to the trial of the other person, the witness received a grant of immunity after the witness threatened to invoke the privilege of self-incrimination if questioned under oath. Thereafter, the witness refused to answer questions put to him by the prosecutor because of alleged conversations with the district attorney in which he was told that if his testimony on the witness stand deviated in any way from what he told the police, he would be prosecuted for perjury.

In affirming the trial court, the Superior Court relied on its ruling in *In re Grand Jury, April Term, 1977, Wayne County,* 251 Pa. Super. 43, 379 A.2d 323 (1977):

"In the instant case, appellant alleges a similar dilemma, which is equally illusory because his testimony could only have been used against him if he committed perjury. *In re Grand Jury, April Term, 1977, Wayne County,* 251 Pa. Super. 43, 379 A.2d 323 (1977), we held that it was no defense to a contempt finding that the wit-

ness believed in good faith that 'if his memory is not completely accurate, he must refuse to testify, deny all recollection, or face perjury charges[.]' *Id.* at 50, 379 A.2d at 326. The court reasoned that 'If necessary, he later may use his faulty memory as a shield to perjury charges; he may not use it now as a sword to avoid the special prosecutor's questions.' *Id.* at 51, 379 A.2d at 326. Similarly, in the present case, appellant may later use the truth as a 'shield' to perjury charges but he may not use it now as a 'sword' to avoid testifying." 322 Pa. Super. at 205, 469 A.2d at 255. (footnote omitted)

The Superior Court also stated that the witness was protected from false prosecutions for perjury by the ethical standards applicable to prosecutors: While the prosecutor has broad discretion to decide whether or not to prosecute, "it is nevertheless required that he or she 'refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause[.]' Rule 3.8 of the American Bar Association Model Rules of Professional Conduct. . . ." 322 Pa. Super. at 206, 469 A.2d at 255.

Mr. Grattan seeks to distinguish *Commonwealth v. Hawkins* on the ground that there are material inconsistencies in Mr. Grattan's testimony before the grand jury that create a greater likelihood of a perjury charge based on any testimony that he gives in the present proceedings. I disagree with this characterization of the testimony of Mr. Grattan.

Furthermore, this same argument was made and rejected in *In re Grand Jury, April Term, 1977, Wayne County, supra.* In that case, the witness contended that he would likely face perjury charges if forced to testify because he did not have a clear recollection of the events. The Superior Court cited *In re Grand Jury Proceedings,*

539 F.2d 382, 383-84 (5th Cir. 1976), where a witness who had been granted immunity feared that because of his poor memory inconsistent statements might be extracted from him, thus subjecting him to the likelihood of a perjury prosecution. The Fifth Circuit rejected that argument, stating that what was required of the witness was no different from that required of all citizens—he must conduct himself within the law to the best of his ability. This includes the requirement that he testify truthfully before a grand jury, and if criminal charges should emanate from these proceedings, he will have ample opportunity to demonstrate that he answered the questions to the best of his ability. The Pennsylvania Superior Court said that "[i]f necessary, he later may use his faulty memory as a shield to perjury charges; he may not use it now as a sword to avoid the special prosecutor's questions." 251 Pa. Super. at 51, 379 A.2d at 326.

Also see *Commonwealth v. Nelson,* 393 Pa. Super. 611, 621, 574 A.2d 1107, 1112 (1990) (a witness may not claim the Fifth Amendment privilege out of fear that he will be prosecuted for perjury for what he is about to say although he may claim the privilege if his new testimony might suggest that he had perjured himself in testifying on the same subject at a prior proceeding).

For these reasons, I enter the following order of court:

ORDER

On April 23, 2001, upon consideration of the motion to compel, it is hereby ordered that Edward Grattan is to testify at a deposition without asserting the privilege against compulsory self-incrimination.