J-A17005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| GARY VELORIC AND NANCY VELORIC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JOHN DOE AND/OR JANE DOE | |
| APPEAL OF: BRAD HEFFLER | |
| | No. 2998 EDA 2014 |

Appeal from the Order Entered September 10, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2012-19479

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED JULY 30, 2015**

Brad Heffler ("Heffler"), a subpoenaed third party, appeals the order entered September 10, 2014, in the Montgomery County Court of Common Pleas, directing him to answer ten deposition questions posed by counsel for plaintiffs, Gary and Nancy Veloric ("the Velorics").  In the underlying action, the Velorics filed suit against "John and Jane Doe" ("the Doe defendants"), seeking damages for, *inter alia*, defamation and slander, based upon an anonymous telephone call and two e-mails Nancy Veloric received, claiming her husband, Gary Veloric, was having an affair.  The order at issue was entered after Heffler invoked his Fifth Amendment privilege against self-incrimination, and refused to answer most of the questions posed to him during his deposition.  On appeal, Heffler contends the trial court erred in

denying his claim of privilege and directing him to answer ten deposition questions. For the reasons below, we affirm.

The facts underlying the order on appeal are aptly summarized by the trial court as follows:

> Plaintiff[s] Gary Veloric and Nancy Verloric, husband and wife ("the [Velorics]"), filed suit against John Doe and/or Jane Doe ("the Doe Defendants"), seeking damages on behalf of Gary Veloric for defamation, slander, libel, injurious falsehood, and intentional infliction of emotional distress, and, damages for loss of consortium on behalf of Nancy Veloric. [The Velorics] aver that Nancy Veloric received a phone call on January 18, 2012 from an unidentified woman ("Jane Doe") who claimed to be Gary Veloric's girlfriend and she was angry because he was having sexual relations with another woman. Nancy Veloric questioned her husband regarding the phone call and he denied the anonymous caller's claims. After some research, Nancy Veloric determined the phone number of the unidentified caller included a Nashville, Tennessee area code, and, was no longer in service.
>
> According to the Complaint, on March 9, 2012, Jane Doe sent an email to Nancy Veloric claiming her husband told her that Gary Veloric was cheating on Nancy with a few different women. Gary Veloric denied these allegations. Another email was sent to Nancy Veloric on May 3, 2012, claiming that "besides other women, he has added hookers, so I'd be really, really careful when you are with him." [The second e-mail also stated that the name on the email "Beth Nashton" and the e-mail address "bnasht@gmail.com" were "made up." Complaint, Exhibit A.].
>
> [The Velorics] proceeded with discovery, and issued subpoenas to third parties Brad and Andrea Heffler to attend and testify at depositions.[7] Brad Heffler was deposed by [the Velorics] on March 14, 2014 ("the Deposition"). Heffler invoked the Fifth Amendment, and attorney client privilege, refusing to answer several of the questions posed to him during the Deposition. [The Velorics] filed a Motion to Compel the Testimony of Brad Heffler ("Motion to Compel"), claiming that Heffler invoked the Fifth Amendment "to virtually every

- 2 -

question." After hearing and argument ("the Hearing") on the Motion to Compel, and reviewing the Deposition, the Court ordered Heffler to answer some of the questions at issue and sustained his objections to others ("the Order"). Other questions remaining were resolved either by counsels' agreement to withdraw certain questions, or, by Heffler's agreement to answer some of the questions. Continuing to rely upon the Fifth Amendment and/or attorney client privilege, Heffler refused to answer those questions he was ordered to answer that were not otherwise resolved, and, this Appeal ensued.

_____

[7] The Velorics and the Hefflers were previously involved in litigation before the Montgomery County Court of Common Pleas in the matter of *Gary Veloric and Nancy Veloric v. Brad Heffler and Andrea Heffler, et. al.*, docketed at 2009-09902, in which the Velorics[] raised claims of trespass, conversion, waste, negligence, and, nuisance. At the time, the Veloric and Heffler residences shared a property line ("the Trespass Complaint"). There were also related cases at *Gary Veloric and Nancy Veloric v. Montgomery County Lands Trust*, docketed at 2010-2140, and *Gary Veloric and Nancy Veloric v. Whitemarsh Township*, docketed at 2009-42979. Ultimately, a praecipe to settle, discontinue and end was docketed in each of these three cases.

Trial Court Opinion, 2/20/2015, at 1-3 (some footnotes and emphasis omitted).[1]

_____

[1] On October 8, 2014, the trial court ordered Heffler to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Heffler complied with the court's directive, and filed a concise statement on October 24, 2014.

We note that the Doe defendants have also filed an appeal from a pretrial discovery order, namely a December 1, 2014, order of the trial court granting the Velorics' motion to compel discovery and ordering the Doe defendants to appear for depositions. That appeal, docketed at No. 121 EDA 2015, was originally listed consecutively with this appeal, however, counsel for the Doe defendants requested, and was granted, a continuance of oral
*(Footnote Continued Next Page)*

Before we address Heffler's substantive issue, we must first consider the Velorics' claim that the order on appeal is not appealable.[2] "We address this issue first because the appealability of an order directly implicates the jurisdiction of the court asked to review the order." *EMC Mortgage, LLC v. Biddle*, 114 A.3d 1057, 1060 (Pa. Super. 2015) (citation omitted).

Generally, "[a]n appeal may be taken only from a final order unless otherwise permitted by statute or rule. A final order is ordinarily one which ends the litigation or disposes of the entire case[.]" *Ben v. Schwartz*, 729 A.2d 547, 550 (Pa. 1999). Most "discovery orders are deemed interlocutory and not immediately appealable because they do not dispose of the litigation." *Dougherty v. Heller*, 97 A.3d 1257, 1261 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal granted in part*, 109 A.3d 675 (Pa. 2015). However, certain discovery orders, particularly those involving ostensibly privileged material, have been found to be immediately appealable as collateral orders pursuant to Pa.R.A.P. 313. *See Berkeyheiser v. A-Plus Investigations, Inc.*, 936 A.2d 1117, 1123-1124 (Pa. Super. 2007).

Rule 313 provides, in relevant part:

---

*(Footnote Continued)* ─────────────

argument. The case is now scheduled to be argued before a panel of this Court in mid-July, 2015.

[2] Heffler addresses the appealability of the order *sub judice* in the second issue in his brief. *See* Heffler's Brief at 21-25.

**(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

In the present case, the order on appeal is the discovery order, entered September 10, 2014, directing Heffler to answer ten specific questions posed by the Velorics' counsel during his deposition and, implicitly overruling Heffler's invocation of his Fifth Amendment privilege against self-incrimination.[3] Heffler contends the order is appealable as a collateral order. We agree.

As noted above, an otherwise interlocutory order may be immediately appealable as a collateral order if it satisfies all three prongs of the collateral

---

[3] At the conclusion of the September 10, 2014, hearing on the issue, the trial court entered a ruling from the bench directing Heffler to answer ten specific deposition questions.  N.T., 9/10/2014 (Court Order) at 1-7.  That same day, the court entered the following written order:

> AND NOW, this 10th day of SEPTEMBER, 2014, after proceeding in open Court this day, the Order of the Court is as recited on the record in open court this day.

> The Court Reporter is directed to transcribe the Notes of Testimony which shall constitute the written Order of the Court. Costs of the transcript shall be shared equally between the parties.

Order, 9/10/2014.

order test. **Dougherty**, **supra**, 97 A.3d at 1261. First, the order must be separate and distinct from the main cause of action. **Berkeyheiser**, **supra**, 936 A.2d at 1123. This prong is easily met by the order *sub judice*. The question of whether Heffler properly invoked his constitutional right against self-incrimination may be addressed without consideration of the merits of the Velorics' underlying defamation action.

The second prong of the collateral order test mandates that the order "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." **Id.** (citations omitted). The courts of this Commonwealth have held that discovery orders raising questions of executive privilege, attorney/client privilege, and privacy interests all raise the type of deeply rooted public policy concerns necessary to qualify as a collateral order. **See Ben**, **supra**, 729 A.2d at 552 (determination as to whether investigative files of Bureau of Professional and Occupational Affairs "are subject to any executive or statutory privilege implicates rights rooted in public policy, and impacts on individuals other than those involved in this particular litigation."); **Berkeyheiser**, **supra**, 936 A.2d at 1124 ("the issues of attorney-client and work-product privileges, as well as privacy concerns, [in an order directing defendant to turn over discovery materials,] implicate rights deeply rooted in public policy, especially where the disclosure of such information affects individuals other than those involved in this particular case."); **J.S. v. Whetzel**, 860 A.2d 1112, 1117 (Pa. Super. 2004) (order directing expert witness "to submit every 1099 form he received from any

insurance company and/or attorney from 1999 through 2002," raised "sufficiently important public concern" regarding expert's privacy interest in his income information to qualify as collateral order).

We find the order at issue herein similarly raises a right "deeply rooted in public policy." *Berkeyheiser*, *supra*, 936 A.2d at 1123. Indeed, Heffler's privilege against self-incrimination is protected under both the United States and Pennsylvania Constitutions. *See* U.S. Const., Amend. V; Pa. Const., Art. I, § 9. Although his answers to the requisite deposition questions would potentially implicate only himself, the privilege against self-incrimination is so engrained in our nation that it constitutes a right "deeply rooted in public policy." *Berkeyheiser*, *supra*, 936 A.2d at 1123. *See Kastigar v. United States*, 406 U.S. 441, 444-445 (1972) ("The privilege [against self-incrimination] reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty[, and t]his Court has been zealous to safeguard the values which underlie the privilege.").

Lastly, to qualify as an appealable collateral order, the order must be such that "if review is postponed until final judgment of the case, the claim will be irreparably lost." *Ben*, *supra*, 729 A.2d at 552. The Velorics argue that this prong is not met in the instant matter because, if Heffler is criminally prosecuted based upon disclosures he makes during his compelled deposition, the trial court in a later criminal matter could exclude the evidence as violative of his privilege against self-incrimination. *See* Velorics'

Brief at 2. Therefore, they insist Heffler's right to review the court's ruling will not be "irreparably lost." *Id.*

However, we find the Velorics' proposal undermines the purpose of the constitutional privilege. First, if Heffler continues to disobey the court's order, he would be subject to sanctions, including contempt proceedings. "[T]he option of disobeying a disclosure order and being thus subject to discovery or contempt sanctions as a way of obtaining review is so extreme as to be no option at all." *Commonwealth v. Harris*, 32 A.3d 243, 251 (Pa. 2011) (holding order overruling claim of doctor/client privilege immediately appealable as collateral order). Moreover, Heffler should not be subject to the costs and emotional toll of a prosecution based upon his privileged answers, even if the answers may later be suppressed. Accordingly, we conclude the order at issue is appealable as a collateral order, and we now turn to the merits of the appeal.

In his primary claim, Heffler argues the trial court erred in implicitly overruling the invocation of his constitutional right against self-incrimination, and directing him to answer the following ten questions, posed to him during his deposition:[4]

_____

[4] Heffler includes a third issue in his brief in which he challenges the trial court's determinations that (1) he waived his claim of privilege because he did not specify the crime with which he could potentially be charged, and (2) he failed to include certain documents necessary for appellate review in the
*(Footnote Continued Next Page)*

1) Have you heard from any other source and learned knowledge of the contents of that alleged phone call [referring to phone call made to Nancy Veloric on January 18, 2012]?

2) Have you learned from any other source any information concerning the telephone number (615)242-4934?

3) Do you have any knowledge of any kind concerning that address [referring to email address "bnasht@gmail.com"]?

4) Are you aware that [the Velorics' counsel] authored a letter to [your counsel] offering to permit you to avoid testifying at a deposition if you would execute an affidavit stating that you had no knowledge of the telephone number, the alleged phone call and the two e-mails and the alleged e-mail address?

5) Let's mark this as P-1 [referring to 10/8/2013 letter from the Velorics' counsel to Heffler's counsel]. … I'm going to show you what I've marked as P-1, and I'm going to ask you if you've ever seen this before.

6) Let's mark this as P-2, then [referring to response from Heffler's counsel to Velorics' counsel]. … I'm showing you a document that I've marked as P-2 and I'm going to ask you if you've ever seen that before.

7) Let's mark this as P-3 [referring to copy of anonymous e-mails sent to Nancy Veloric]. … Do you have any information as to who authored the two e-mails on P-3?

8) Do you see on P-3 that the two e-mails that are referenced are dated, respectively, March 9, 2012 and May 3, 2012, although I think they might be actually reversed on the page?

9) I'm going to rephrase that. Are you aware of any information concerning the identity of the Doe defendant or defendants in this case?

_(Footnote Continued)_ ──────────

certified record. **See** Heffler's Brief at 25-27. We will address those contentions within this issue.

> 10) Do you have any knowledge of any kind that would lead you to believe who the Doe defendant or defendants may be?

*See* Trial Court Opinion, 2/20/2015, at 6-10, *citing* Oral Deposition of Brad Heffler, 3/14/2014, at 17, 19, 20, 22-23, 26-27. In response to each of these questions, Heffler invoked his right to remain silent under the Fifth Amendment.[5]

It is well-settled that "the privilege against self-incrimination can be asserted 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.'" *Maness v. Meyers*, 419 U.S. 449, 464, (1975) (citation omitted). When the privilege is invoked in state proceedings, it is governed by federal standards. *Commonwealth v. Hawthorne*, 236 A.2d 519, 520 (Pa. 1968). "In other words, the standards to be [] used in determining whether or not the silence of one questioned about the commission of a crime is justified are the same in both state and federal proceedings." *Commonwealth v. Carrera*, 227 A.2d 627, 629 (Pa. 1967), *superseded by statute on other grounds*, *Commonwealth v. Swinehart*, 664 A.2d 957 (Pa. 1995).

---

[5] With regard to questions four, five and six, Heffler also refused to answer based upon attorney/client privilege. *See* Oral Deposition of Brad Heffler, 3/14/2014, at 19-23. However, in his concise statement and his brief before this Court, Heffler challenges the court's ruling **only** with respect to his **privilege against self-incrimination**. Therefore, he has waived any attorney/client privilege claim on appeal. *See Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 781 (Pa. Super. 2015) ("Because Appellant has failed to develop his argument or cite authority, he is not entitled to relief on his first claim.").

Our review of a Fifth Amendment claim is governed by the following principles:

> The Fifth Amendment declares in part that 'No person * * * shall be compelled in any Criminal Case to be a witness against himself'. This guarantee against testimonial compulsion, like other provisions of the Bill of Rights, 'was added to the original Constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed.' This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure.
>
> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. **The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.'** However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. **To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.** The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'

*Hoffman v. United States*, 341 U.S. 479, 485-487 (1951) (internal citations omitted and emphasis supplied). *See also Carrera*, *supra*.

In its opinion, the trial court first concluded Heffler waived his challenge to questions five, six, seven and eight because he failed to insure that the exhibits referred to in those questions were part of the certified record. **See** Trial Court Opinion, 2/20/2015, at 11. Next, with regard to the remaining questions, the court determined Heffler "is mistaken in his concerns regarding self-incrimination." ***Id.*** at 13. The court provided the following rationale:

> Heffler acknowledges that he is not at risk of prosecution based upon harassment, because the statute of limitations for harassment is only two years and the events at issue occurred between January 18, 2012 and May 3, 2012 []. He then argues, however, other criminal offenses in Pennsylvania are subject to five-year statutes of limitation, citing 42 Pa.C.S.A. § 5552(b) ("Section 5552(b)"). Heffler's [Memorandum of Law in Opposition to Plaintiff's Motion to Compel His Testimony], however, fails to indicate which of the some twenty-eight major offenses listed in Section 5552(b) he could be charged with in the event the Order is affirmed. Nor does the Concise Statement raise a claim of error regarding any specific offense he might be charged with in the event he answers the Questions. Without more detail as to which of the crime(s) listed in Section 5552(b) apply, the Court cannot address this argument. Further, upon review, it does not appear that Heffler could be charged with any criminal offense under Section 5552(b).
>
> Our Supreme Court explained that when an individual is called to testify in a judicial proceeding, "he or she is not exonerated from answering questions merely upon the declaration that in doing so it would be self-incriminating. It is always for the court to judge if the silence is justified, and an illusory claim should be rejected." ***Carrera***, 227 A.2d at 629. The U.S. Constitution and the Pennsylvania Constitution both protect an individual from being called as a witness against himself in criminal and civil proceedings, formal or informal, where the answers to questions might incriminate the individual in further criminal proceedings. The Court is hard-pressed,

however, to find that the answers to the Question[s] could possibly be incriminating.

*Id.* at 13-14 (footnote omitted).

With regard to the court's determination that he waived his challenge to questions five, six, seven and eight, Heffler acknowledges that the trial court is "technically correct" that Exhibits P-1 and P-2, referred to in questions five and six, were not made part of the certified record. Heffler's Brief at 26. However, he asserts the exhibits "were described on the record, and it appeared as if the court was looking at them[.]"[6] *Id.* Moreover, after the appeal was filed, the parties entered into a stipulation whereby they agreed that Exhibits P-1 and P-2 "should be included in the original record and transmitted to the Superior Court of Pennsylvania." Stipulation, 3/3/2015. Thereafter, on March 4, 2015, Heffler filed an application in this Court for correction of the certified record. On March 30, 2015, we granted Heffler's application, and the trial court later supplemented the certified record with the letters that were designated as Exhibits P-1 and P-2 during Heffler's March 14, 2014, deposition. Accordingly, we are not precluded from reviewing Heffler's Fifth Amendment challenge to questions five and six.

---

[6] ***See*** Oral Deposition of Brad Heffler, 3/14/2014, at 22 (identifying Exhibit P-1 as a letter from Velorics' counsel to Heffler's counsel dated 10/8/2013); 24 (identifying Exhibit P-2 as a letter from Heffler's counsel to Velorics' counsel in response to the 10/8/2013 letter).

With regard to the exhibit P-3, referred to in questions seven and eight, our review of Heffler's deposition transcript reveals that Exhibit P-3 was a printed copy of the two anonymous emails Nancy Veloric received from the sender, "bnasht@gmail.com." *See* Oral Deposition of Brad Heffler, 3/14/2014, at 25-26. Further, these emails were part of the certified record, as they are attached to the Velorics' complaint. *See* Complaint, 7/19/2012, Exhibit A. Accordingly, we agree with Heffler that his challenge to all ten questions at issue is preserved for our review.

Nevertheless, we find that Heffler's Fifth Amendment challenge to questions four, five, six and eight fails on the merits. With respect to these questions, Heffler was asked: (1) if he was **aware the Velorics' counsel sent a letter to his attorney** offering him the opportunity to execute an affidavit in lieu of deposition testimony (Question 4); (2) if **he had seen the letter** from the Velorics' counsel before the deposition (Question 5); (3) if **he had ever seen the response** sent by his own lawyer (Question 6); and (4) if he could **see the date of the e-mails on the exhibit** (Question 8). We can conceive of no answers to these questions that would tend to incriminate Heffler, or lead to evidence that might demonstrate his culpability for the acts described in the complaint. *See Hoffman*, *supra*.

Accordingly, we conclude the trial court properly overruled his claim of privilege with regard to these questions.[7]

With regard to the remaining questions, Heffler argues that "[e]ach question … has a possible answer that could lead to evidence that would support [his] violation of crimes related to the use of computers, or a conspiracy to do so." Heffler's Brief at 21. He emphasizes he is not required to "prove the hazard, because then he … would surrender the protection the privilege was designed to protect." *Id.* at 18, *citing* **Hoffman**, **supra**. Moreover, he claims he need not demonstrate "a real danger of prosecution exists." *Id.* at 17. Although Heffler does not provide any analysis of the potential crimes with which he might be charged, he asserts the Velorics' counsel "conceded" that his answers could lead to a charge of unlawful use of a computer, a crime that was still within the statute of limitations. *Id.* at 20.

Furthermore, we note that at oral argument for this appeal, Heffler again declined to expound on the specific crimes with which he might be charged, but referred to the Velorics' complaint, which stated "whatever salacious purpose the sender or senders have, that purpose is both civilly and **criminally censorable, both under State and under Federal Law**."

---

[7] We note Heffler does not differentiate between the questions he was directed to answer. Rather, he claims, generally, that all of the questions could lead to incriminating answers.

- 15 -

Complaint, at ¶ 18 (emphasis supplied). Heffler also cited two Pennsylvania Supreme Court decisions, to support his contention that the fact that the statute of limitations may have expired with regard to a criminal charge is not grounds for compelling a witness to testify when he has invoked his Fifth Amendment privilege. *See McFadden v. Reynolds*, 11 A. 638 (Pa. 1887); *Commonwealth v. Lenart*, 242 A.2d 259 (Pa. 1968) (plurality).

Upon our review, it appears the crux of Heffler's argument is that once he has invoked his Fifth Amendment privilege, he has no further burden to prove that his answers may provide incriminating testimony. *See* Heffler's Brief at 18 ("The witness is not required to prove the hazard, because then he or she would surrender the protection the privilege was designed to protect."). Further, he distinguishes a Commonwealth Court decision, cited by the Velorics, which places the burden squarely on the witness to establish "that he or she has a reasonable ground for asserting the privilege." *McDonough v. Com., Dep't of Transp., Bureau of Driver Licensing*, 18 A.2d 1258, 1261 (Pa. Commw. 1992). Heffler contends the *McDonough* Court relied upon a 1911 Supreme Court decision "which cannot survive the adoption of the federal standard" announced in *Carrera*, *supra*. Heffler's Brief at 19.

Our review of the relevant case law, however, confirms that Heffler has the burden to demonstrate he has "reasonable cause to apprehend" a "real danger of prosecution" should he be compelled to testify. *Carrera*, *supra*, 227 A.2d at 629. As Heffler asserts, a witness is not "required to

- 16 -

prove the hazard" since, in doing so, "he would be compelled to surrender the very protection which the privilege is designed to guarantee." **Hoffman**, **supra**, 341 U.S. at 486. However, we interpret this passage in **Hoffman** to mean the witness **need not provide answers to the questions** before the trial court can determine whether or not the answers might be incriminating. The Supreme Court has made clear:

> The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself – his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.'

**Id.** (citations omitted). Were we to accept Heffler's contention, that the witness asserting the privilege has no burden of proof, we would exonerate a witness based solely on his "say-so." **Id.** Rather, pursuant to **Hoffman**, and its progeny, the final determination as to whether the privilege was properly invoked lies with the trial court. As the Supreme Court explained in **United States v. Reynolds**, 345 U.S. 1 (1953):

> Indeed, in the earlier stages of judicial experience with the problem, both extremes were advocated, some saying that the bare assertion by the witness must be taken as conclusive, and others saying that the witness should be required to reveal the matter behind his claim of privilege to the judge for verification. Neither extreme prevailed, and a sound formula of compromise was developed. … There are differences in phraseology, but in substance it is agreed that the court must be satisfied from all the evidence and circumstances, and 'from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.' **If the court is so satisfied, the claim**

- 17 -

**of the privilege will be accepted without requiring further disclosure.**

*Id.* at 8-9 (emphasis supplied). Therefore, a witness must demonstrate to the court that he has "reasonable cause to apprehend danger from a direct answer." *Hoffman*, *supra*, 341 U.S. at 486.

Here, the trial court was not satisfied that Heffler's responsive answers might be incriminating. First, the court explained that the one obvious crime with which Heffler could be charged was harassment, but that crime has a two-year statute of limitations which had expired. *See* Trial Court Opinion, 2/20/2015, at 13. The court acknowledged there are several offenses, listed in 42 Pa.C.S. § 5552(b), which are subject to a five-year statute of limitations, but noted that Heffler failed to indicate which of these crimes might be implicated by his proposed testimony. Indeed, our review of the crimes listed in Section 5552(b) reveals that none apply to the facts alleged in the complaint, save for the offense of unlawful use of a computer. *See* 42 Pa.C.S. § 5552(b);[8] 18 Pa.C.S. § 7611 (Unlawful Use of A Computer and Other Computer Crimes). However, our review of the elements of that crime reveals that it is not implicated by the acts described in the complaint.[9]

_____

[8] The crime of unlawful use of a computer is listed in Section 5552(b) as "section 3933 (relating to unlawful use of a computer)." 42 Pa. C.S. § 5552(b). However, Section 3933 was repealed in 2002, and replaced by Section 7611. *See* 2002, Dec. 16, P.L. 1953, No. 226, § 3 , effective in 60 days.

[9] The crime of unlawful use of a computer, codified at 18 Pa.C.S. § 7611, provides that a person commits the offense if he:
*(Footnote Continued Next Page)*

Significantly, Heffler does not specify which crimes might be implicated by the acts alleged in the complaint, and provides no analysis establishing that his answers might support a charge of unlawful use of a computer as delineated in 18 Pa.C.S. § 7611. While Heffler is not required to provide potentially incriminating answers to the questions before asserting his Fifth

_(Footnote Continued)_ ───────────

> (1) **accesses or exceeds authorization to access**, alters, damages or destroys **any computer, computer system, computer network**, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof with the intent to interrupt the normal functioning of a person or to devise or execute any scheme or artifice to defraud or deceive or control property or services by means of false or fraudulent pretenses, representations or promises;
>
> (2) **intentionally and without authorization accesses or exceeds authorization to access, alters, interferes with the operation of, damages or destroys any computer, computer system**, computer network, computer software, computer program, computer database, World Wide Web site or telecommunication device or any part thereof; or
>
> (3) **intentionally or knowingly and without authorization gives or publishes a password, identifying code, personal identification number** or other confidential information about a computer, computer system, computer network, computer database, World Wide Web site or telecommunication device.

18 Pa.C.S. § 7611(a) (emphasis supplied). Here, the facts alleged in the complaint assert that the Does sent two anonymous, defamatory e-mails to Nancy Veloric. _**See**_ Complaint, 7/19/2012, at ¶¶ 7-16. There are no allegations that the Does accessed a computer or computer system, or knowingly published a password. It is not clear that simply sending a defamatory e-mail would constitute a violation of the statute.

- 19 -

Amendment privilege, he must demonstrate "reasonable cause to apprehend danger[.]" **Hoffman**, **supra**, 341 U.S. at 486. This, he failed to do.[10]

Heffler also challenges the trial court's conclusion that he cannot invoke his Fifth Amendment right when the statute of limitations has expired with respect to the potential crime. He cites two decisions of the Pennsylvania Supreme Court which hold the contrary. We conclude, however, that the viability of these decisions is questionable at best.

In the 1887 decision, **McFadden**, **supra**, the plaintiff sued the defendant for breach of a promise of marriage. The defense called a witness to testify whether he had carnal knowledge of the plaintiff on a date two years earlier. The witness declined to answer, invoking his Fifth Amendment right, although he conceded that any prosecution would be barred by the statute of limitations. The trial court declined to compel the witness to testify, and on appeal, the Supreme Court affirmed. The Court explained:

> We are not prepared to hold that, where a witness is asked upon the stand to say whether he has committed a crime, he shall be compelled to do so simply because he may, if a prosecution for that crime is subsequently instituted against him, plead the statute of limitations in defense. It seems to us he is protected against [in]criminating himself in such a manner as to subject himself even to a prosecution.

**McFadden**, **supra**, 11 A. at ____.

_____

[10] We do not find that Heffler's mere reference to the Velorics' complaint, in which the Velorics assert the Does' actions were "criminally censorable, both under State and Federal Law," satisfies this burden. Heffler's Brief at 26.

- 20 -

The only appellate decision citing **McFadden** is **Lenart**, **supra**. In that case, a two-justice plurality,[11] rejected the Commonwealth's argument that a government witness should have been compelled to testify when the prosecution of any implicated offense was barred by the statute of limitations. **Lenart**, **supra**, 242 A.2d at 262. Relying on **McFadden**, the plurality stated:

> [T]he statute of limitations is not per se a bar to prosecution; it is an affirmative defense which must be pleaded. Thus, if not pleaded, the prosecution machinery will grind. The privilege against self-incrimination is not limited to those cases where the witness can be Convicted on the basis of his testimony. The privilege protects him regardless as to whether or not the trial would result in a conviction.

**Id.** The plurality declined to overrule **McFadden**, despite the Commonwealth's claim that the "overwhelmingly favored" rule was that the privilege does not attach when the acts are no longer punishable by reason of the expiration of the statute of limitations. **Id.** at 262-263.

However, in a concurring opinion, Justice O'Brien, joined by Justice Roberts, declared he "would not at this time reaffirm the holding of **McFadden**" which he described as "a case that has not withstood the test of time." **Id.** at 264 (O'Brien, J., Concurring). Rather, Justice O'Brien noted "[i]f the witness cannot be convicted of the crime, the fact that he can be

---

[11] Justice Musmanno authored the Opinion of the Court, and was joined by Chief Justice Bell. Justice O'Brien authored a Concurring Opinion, joined by Justice Roberts. Justices Jones, Cohen and Eagen concurred in the result.

prosecuted for it is of only academic interest." *Id.*  However, because he found it was not "altogether clear … that conviction for any crimes revealed by [the witness's] testimony would be barred by the statute of limitations," Justice O'Brien concluded that the witness properly exercised his privilege. *Id.*

Therefore, while **McFadden** has not been overruled, its continued vitality is dubious.  This is particularly true since in **Brown v. Walker**, 161 U.S. 591 (1896), the United States Supreme Court held that a witness may **not** invoke his Fifth Amendment privilege when the offense with which he could be charged is barred by the statute of limitations.  The Court opined: "[I]f a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compellable to answer." **Id.** at 598.  **See also Stogner v. California**, 539 U.S. 607, 620 (2003) ("[The Supreme Court] has clearly stated that the Fifth Amendment's privilege against self-incrimination does not apply after the relevant limitations period has expired."), *citing* **Brown**, *supra*.

In light of the United States Supreme Court's decision in **Brown**, we decline to follow **McFadden**.  Indeed, it is axiomatic that when the Fifth Amendment privilege is invoked in state proceedings, it is governed by federal standards.  **Hawthorne**, *supra*; **Carrera**, *supra*.  Accordingly, we conclude the trial court properly considered the fact that the only obvious crime with which Heffler could have been charged based upon his deposition testimony – harassment - was barred by the statute of limitations.

Moreover, we find that any other possible indictment based upon unspecified state and/or federal crimes was improbable, and Heffler failed to demonstrate "**reasonable cause** to apprehend danger from a direct answer." **Hoffman**, **supra**, 341 U.S. at 486 (emphasis supplied). Indeed, we agree with the conclusion of the trial court that "Heffler's refusal to answer the Questions based upon the Fifth Amendment is not supported by the record in this case as it is perfectly clear that there is no risk of self-incrimination[.]" Trial Court Opinion, 2/20/2015, at 14.

Accordingly, we affirm the order of the trial court overruling Heffler's invocation of his Fifth Amendment privilege and directing Heffler to answer ten deposition questions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2015